REITLER KAILAS & ROSENBLATT LLC
Brian D. Caplan (BC-1713)
885 Third Avenue, 20th Floor
New York, NY 10022
Phone: (212) 209-3050
Fax: (212) 371-5500
Email: bcaplan@reitlerlaw.com
*Attorneys for Plaintiff Jon Jon Traxx, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| JON JON TRAXX, LLC,<br><br>                    Plaintiff,<br><br>     -against-<br><br>AMETHYST KELLY p/k/a "IGGY AZALEA,"<br><br>                    Defendant. | Case No.  16-cv-3493<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Jon Jon Traxx, LLC, by its attorneys, Reitler Kailas & Rosenblatt LLC, for its Complaint against the defendant herein, alleges as follows:

### THE PARTIES

1.      Plaintiff Jon Jon Traxx, LLC ("Plaintiff") is a Georgia limited liability company with its principal place of business located in Florida.

2.      Plaintiff is an independent music production company.

3.      Defendant Amethyst Kelly, professionally known as "Iggy Azalea" ("Defendant") is a rapper, recording artist and performer who, upon information and belief, resides in Australia.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy,

1

exclusive of interest and costs, exceeds the sum of $75,000.

5. Venue lies in this district pursuant to 28 U.S.C. §1391(a) in that a substantial part of the events giving rise to the claims herein occurred in the Southern District of New York, and at the time of commencing this action, Defendant is subject to personal jurisdiction in the Southern District of New York.

6. Venue and personal jurisdiction are also proper in this District pursuant to paragraph 7 of a written agreement entered into between the parties dated as of January 2013 (the "Termination Agreement") wherein the parties agreed to the exclusive jurisdiction of New York courts over this action.

## BACKGROUND

7. Plaintiff, as a music production company, coordinates the production and promotion of sound recordings by recording artists on its roster.

8. Plaintiff also scouts musical talent and develops new artists.

9. In or about the spring of 2008 in Houston, Texas, Plaintiff met Defendant and recognized her significant talents.

10. Over an extended period of time stretching more than two years, Plaintiff nurtured Defendant's career, giving her the tools and connections to transform her from an aspiring artist into a world-famous star.  Among the many opportunities Plaintiff created for Defendant, Plaintiff:

   a. introduced Defendant to various larger record companies, such as Interscope, Def Jam, and Universal Records;

   b. arranged performance showcases for Defendant;

      c. connected her with influential people in the music entertainment industry, including, but not limited to, A&R executives from RCA, Def Jam and Sony and producers Rodney Jerkins p/k/a "Darkchild" and FKi; and

      d. gave Defendant substantive advice pertaining to her singing, rapping, and stage presence, and guided her music selection to best fit her talents.

11. Plaintiff placed Defendant in studio sessions with songwriters like Natalie Sims p/k/a "Suzy Rock," who would go on to co-write songs on Defendant's first studio album.

12. Plaintiff helped Defendant prepare for the spotlight by working with a stylist to curate her image, giving Defendant media training, and assembling an artist development team with a choreographer, vocal coach, and publicist.

13. Plaintiff and Defendant entered into a formal written recording agreement dated as of August 19, 2009 (the "Recording Agreement").

14. By 2012, in no small part due to the efforts and contributions of Plaintiff, Defendant was on her way to becoming a household name, performing alongside rap stars T.I. and B.o.B. at the BET Music Awards, touring with Rita Ora, and appearing on the televised VH1 Divas concert.

15. Having used Plaintiff to open many doors in the music industry for her, Defendant stopped communicating with Plaintiff.

16. Moreover, notwithstanding the fact that she was already bound by the Recording Agreement with Plaintiff, Defendant was in negotiations to enter into new agreements with two (2) big name record companies: Mercury Records Limited in the UK and Island Def Jam in the United States.

17.     In or about January 2013, Plaintiff agreed to terminate the term of the Recording Agreement, conditioned upon receipt of consideration therefor, and entered into a written agreement with Defendant to that effect (the "Termination Agreement").

18.     Upon information and belief, Defendant entered into a recording agreement with Mercury Records on or about February 13, 2013.

19.     Upon information and belief, Defendant entered into a recording agreement with Island Def Jam in or about April 2013.

20.     Defendant's first studio album entitled "The New Classic" was commercially released on or about April 21, 2014.

21.     A deluxe version of The New Classic, "Reclassified," was released later that same year.  (The New Classic and Reclassified are collectively hereinafter referred to as the "First Album.")

22.     Defendant received four (4) Grammy Award nominations for the First Album and the First Album has been certified Gold by the Recording Industry Association of America.

23.     Plaintiff's logo does not appear anywhere on the First Album.

24.     Plaintiff was not given the opportunity to produce any master recordings appearing on the First Album.

25.     Defendant is credited as a co-author of all of the compositions contained on the First Album, including the following compositions:

- 100
- Beg For It
- Black Widow
- Bounce
- Change Your Life
- Don't Need Y'all
- Fancy
- Fuck Love
- Goddess
- Heavy Crown
- Iggy SZN
- Impossible Is Nothing
- Just Askin'
- Lady Patra
- New Bitch
- Rolex

4

- Trouble
- Walk The Line
- We In This Bitch
- Work

26. Upon information and belief, Defendant's second studio album, entitled "Digital Distortion," is slated to be released in June 2016 (the "Second Album").

27. The first track off the Second Album was made available for free streaming in January 2016 and the lead single from the Second Album was commercially released on or about March 18, 2016. (The First Album and the Second Album are collectively hereinafter referred to as the "Albums.")

28. Upon information and belief, Defendant is a co-author of all of the compositions contained on the Second Album.

29. Upon information and belief, Plaintiff's logo does not and will not appear anywhere on the Second Album.

30. Plaintiff was not given the opportunity to produce any master recordings appearing on the Second Album.

31. Upon information and belief, Defendant has received income from the commercial exploitation of the sound recordings contained on the Albums, including, but not limited to, mechanical royalties and synchronization income.

32. Upon further information and belief, Defendant has received income from the commercial exploitation of the musical compositions embodied on the Albums, including, but not limited to, income from music publisher Sony/ATV and/or ASCAP.

33. In connection with her music career, Defendant has toured the world, performed live in various venues, and appeared both as a headliner and as an opener for other artists such as Beyoncé and various performers affiliated with Jay-Z's entertainment company, Roc Nation.

34. Upon information and belief, Defendant has engaged in and received financial compensation from, and continues to engage in and receive financial compensation from, numerous entertainment-related endeavors other than her music, including, but not limited to, merchandise, modeling, hosting, acting, endorsements, clothing and accessory design, and more.

35. Paragraph 1(a) of the Termination Agreement provides:[1]



36. Paragraph 1(b) of the Termination Agreement provides:



37. Paragraph 1(c) of the Termination Agreement provides, in relevant part:



38. Paragraph 1(d) of the Termination Agreement provides, in relevant part:



---

1. Paragraphs 35 through 43 herein are redacted by reason of an existing confidentiality agreement and the confidential nature of the information contained therein.



[redacted]

39. Paragraph 1(e) of the Termination Agreement provides, in relevant part:

[redacted]

40. Paragraph 1(e)(i) of the Termination Agreement defines "[redacted]" as:

[redacted]

41. Paragraph 1(f) of the Termination Agreement provides, in relevant part:

[redacted]

42. Paragraph 1(g) of the Termination Agreement provides, in relevant part:

[redacted]





43. Paragraph 2(b) of the Termination Agreement provides, in relevant part:



44. Defendant has failed and refused to comply with her obligations under the Termination Agreement and is in material breach of the Termination Agreement.

45. In a letter sent on or about January 29, 2015, Scott J. Sholder, Esq., Plaintiff's counsel, notified Defendant of her material breaches of the Termination Agreement and demanded an accounting and payment of all monies due to Plaintiff thereunder.

46. By letter dated February 4, 2015, Defendant's counsel, Marjorie Garcia, Esq., acknowledged Defendant's receipt of the demand letter, and indicated that Defendant would prepare an accounting of payments due to Plaintiff in accordance with the Termination Agreement and "pay or cause to be paid such amounts" to Plaintiff.

47. By letter dated February 9, 2015, counsel for Plaintiff reiterated Plaintiff's demand for a full accounting and payment of monies due to Plaintiff pursuant the Termination Agreement.

48. In a letter dated February 23, 2015, Ms. Garcia advised that Defendant was "diligently preparing the accounting of any sums that may be owed to [Plaintiff] in accordance

with the January 2013 termination agreement" and that Plaintiff could expect to receive such accounting and any applicable payment by February 27, 2015.

49. Defendant provided Plaintiff with a purported accounting on March 10, 2015 for monies due and owing to Plaintiff pursuant to the Termination Agreement through December 31, 2014, grossly underreporting the sums due Plaintiff and without any documentation to support the figures cited therein.

50. Plaintiff objected to the accounting as deficient and demanded back-up documentation for Defendant's calculations.

51. On or about May 29, 2015, Defendant's counsel provided Plaintiff with a revised purported accounting for monies due and owing to Plaintiff pursuant to the Termination Agreement through March 31, 2015, again grossly underreporting the sums due Plaintiff and without any support for the figures cited therein.

52. Plaintiff objected to the revised accounting as deficient and demanded back-up documentation for Defendant's revised calculations.

53. By letter dated February 26, 2016, counsel for Plaintiff again requested documentation concerning monies owed to Plaintiff under the Termination Agreement.

54. To date, Defendant has failed and refused to provide any such documentation.

55. To date, Plaintiff has not received any monies or consideration other than the Signing Payment from Defendant in connection with the Termination Agreement.

## COUNT I

## BREACH OF CONTRACT

56. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 55 above as if fully set forth herein at length.

57. By reason of the foregoing, Defendant has materially breached the Termination Agreement.

58. Plaintiff has satisfactorily performed all of its obligations to Defendant under the Termination Agreement.

59. As a direct and proximate result of Defendant's breaches of the Termination Agreement, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $1,500,000.

## COUNT II

## RESCISSION

60. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 59 above as if fully set forth herein at length.

61. By reason of the foregoing, Defendant has materially breached the Termination Agreement.

62. Plaintiff has satisfactorily performed all of its obligations to Defendant under the Termination Agreement.

63. Accordingly, Plaintiff is entitled to the rescission of the Termination Agreement.

64. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment as follows:

(a) On the First Claim, an award of damages to Plaintiff in an amount to be determined at trial, but not less than $1,500,000.00, plus prejudgment interest thereon;

(b) On the Second Claim, a declaration that the Termination Agreement dated as of January 2013 is of no force and effect, invalid, rescinded and not binding upon Plaintiff;

(c) An award to Plaintiff of the costs and disbursements incurred in this action; and

(d) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 10, 2016

REITLER KAILAS & ROSENBLATT, LLC
Attorneys for Plaintiff


By: /s/ Brian D. Caplan
Brian D. Caplan (BC-1713)
885 Third Avenue, 20th Floor
New York, NY 10022
Tel. (212) 209-3050